## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **Agro Sevilla USA, Inc.,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES OF AMERICA; and UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT,** *in his capacity as Commissioner of United States Customs and Border Protection* | **Court No. 26-01142** |
| **Defendants** | |

## COMPLAINT

Agro Sevilla USA, Inc. ("Agro Sevilla" or "Plaintiff"), by and through its undersigned counsel, alleges the following:

1.      Agro Sevilla is the importer of record for olives from Spain subject to the tariffs, *i.e.*, duties, challenged in this complaint.  As with challenges raised by other similarly-situated plaintiffs, Plaintiff brings this action to (a) challenge the legality of the tariffs imposed since February 2025 pursuant to the International Emergency Economic Powers Act ("IEEPA") as applied to Plaintiff, and (b) seek refunds of any and all duties Plaintiff has paid pursuant to the challenged tariff actions.

2.      Since February 2025, the President of the United States has signed a series of Executive Orders invoking IEEPA as the basis for imposing broad new tariffs ("IEEPA duties") on goods entering the United States from nearly every country, including Spain.  As an importer of record, Agro Sevilla is responsible for tendering payment of IEEPA duties on goods it imports

into the United States to Defendant U.S. Customs and Border Protection ("CBP" or

"Defendant"), and, in fact, has paid approximately $137,908.38 of such duties.

 3. On January 20, 2026, the Supreme Court "h[e]ld that IEEPA does not authorize

the President to impose tariffs." *See Learning Resources, Inc. et al.. v. Trump*, 607 U.S. \_\_\_\_

(2026), slip op. at 20 (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.

2025)).

 4. Consistent with the decision of this Court, the Federal Circuit, and the U.S.

Supreme Court in *Learning Resources* and *V.O.S. Selections,* Plaintiff seeks a declaration and

order that the IEEPA duties imposed under these Executive Orders are unlawful as applied to

Plaintiff.

 5. Plaintiff brings this separate action to ensure its right to refunds of any and all

unlawfully collected duties under IEEPA.  The Supreme Court has held that the IEEPA duties

and the underlying Executive Orders are illegal, yet there is a risk that importers may not be

assured refunds of the unlawfully collected tariffs without their own court judgment providing

judicial relief.  *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection*,

Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

 6. Plaintiff's import entries that were assessed IEEPA duties pursuant to the

challenged Executive Orders will soon begin to liquidate by no later than March 22, 2026.

 7. Accordingly, with respect to all import entries for which it paid IEEPA duties,

Plaintiff seeks (i) a declaration that such IEEPA duties are unlawful as applied to Plaintiff; (ii) an

injunction barring Defendants from continuing to assess or collect duties imposed under the

challenged Executive Orders; and (iii) an order requiring Defendants to refund all IEEPA duties

Plaintiff already paid on its covered imports, as well as any such duties Plaintiff pays during the

pendency of this action.  To the extent that Plaintiff's entries subject to IEEPA duties liquidate during the pendency of this action, Plaintiff also seeks remedial relief in the form of reliquidation such that Plaintiff can receive a refund (with interest) of all IEEPA duties paid.

## PARTIES

8.      Agro Sevilla USA, Inc. is the U.S. arm of Agro Sevilla Aceitunas S.Coop.And, a Spanish second-tier cooperative composed of 13 first-tier cooperatives, which in turn are composed of hundreds of olive growers from the Andalucia region of Spain.  All of the olives imported by Agro Sevilla are grown in and around Sevilla, Spain.  Plaintiff is the importer of record for this merchandise.

9.      Defendant, the United States of America, is the federal government of the United States of America.  Defendant United States of America imposed and received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

10.      Defendant United States Customs and Border Protection ("CBP") is a component agency of the United States Department of Homeland Security ("DHS"), headquartered in Washington, D.C.  CBP is responsible for administering and collecting duties and taxes on goods imported into the United States.

11.      Defendant Rodney S. Scott is the Commissioner of CBP and is named as a Defendant in his official capacity.

## JURISDICTION AND STANDING

12.      The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i).  *See V.O.S. Selections*, 149 F.4th at 1334; *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

13.     In addition, this Court possesses the same equitable authority as a federal district court under 28 U.S.C. § 1585.  Where a civil action arises under 28 U.S.C. § 1581, this Court may issue a money judgment against the United States and grant any other appropriate remedy, such as declaratory relief, injunctions, remand orders, and writs of mandamus or prohibition.  *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

14.     Plaintiff has standing to pursue this action because it is the importer of record for merchandise subject to the challenged IEEPA duties.

15.     Plaintiff has paid IEEPA duties pursuant to those very Executive Order that have been found to be unlawful and has therefore suffered direct injury.  Those injuries are addressable through declaratory and injunctive relief.

**GENERAL PLEADINGS**

**I.    The President has Issued Multiple Tariff Orders Invoking IEEPA Authority**

**A.    The IEEPA Tariff Orders**

16.    On February 1, 2025, the President issued three Executive Orders imposing new tariffs on imports from Mexico, Canada, and China.  Each order invoked IEEPA as the statutory basis for authorizing the tariffs.  Each order justified the tariffs as necessary to address a claimed national emergency related to risks arising from alleged trafficking of illegal drugs into the United States and/or risks arising from illegal immigration.  Collectively, Plaintiff refers to these orders as the "Trafficking Tariff Orders."

17.    Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"),[1] imposed an additional 25 percent tariff on imports from Mexico.  The order justified the use of emergency powers by citing risks allegedly arising from an influx of illegal immigration and illicit drugs into the United States and Mexico's alleged failure to take action to counter those risks.  *Id.*

18.    Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[2] similarly declared an emergency tied to opioid trafficking and imposed a 25 percent additional tariff on imports from Canada, with certain exceptions.

19.    A third order, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025).

[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025) ("energy or energy resources" from Canada were subject to an additional 10 percent tariff).

Order"),[3] declared a national emergency related to opioid trafficking, asserting that "the sustained influx of synthetic opioids" constituted a national emergency and claimed that chemical suppliers based in China evaded enforcement efforts by hiding "illicit substances in the flow of legitimate commerce." This order imposed an additional 10 percent *ad valorem* duty on imports of Chinese goods.

20.    On March 3, 2025, the President issued an amendment to the prior China Tariff Order via Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[4] This amendment increased the tariff rates imposed by the February 1, 2025 China Tariff Order to 20 percent on the basis that China had "not taken adequate steps to alleviate the illicit drug crisis".[5]

21.    The following month, on April 2, 2025, citing the persistent U.S. trade deficit as a separate national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficit* ("Reciprocal Tariff Order").[6] This order imposed a baseline 10 percent tariff on nearly all U.S. imports effective April 5, 2025, and increased the "reciprocal" tariffs on 56 countries and the member states of the European Union

---

[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

[4] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[5] *Id.*

[6] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

effective April 9, 2025.[7]  Since July 2025, member states of the European Union, including

Spain, have been subject to a 15% reciprocal tariff under this Order.

22.     In implementing these Executive Orders, the Defendants directed modifications to

the HTS so that merchandise subject to the new duties would instead enter under newly assigned

(Chapter 99) tariff codes.

### B.    Subsequent Litigation Challenging the IEEPA Tariff Orders

23.     On April 14, 2025, multiple companies filed an action in this Court challenging

the legality of these Executive Orders.  *See V.O.S. Selections, et al. v. Donald Trump, et al.*, No.

25-066 (Ct. Int'l Trade 2025).  This Court held that the orders were unlawful,[8] and the Federal

Circuit and Supreme Court affirmed.[9]

24.     Since that time, the President has issued additional Executive Orders imposing or

modifying tariffs under IEEPA.  Per the Supreme Court's decision, it is now clear that IEEPA

does not authorize tariffs—full stop.  *Learning Resources*, 607 U.S. ___, Slip Op. at 20 ("[T]he

terms of IEEPA do not authorize tariffs"); *see also id.* at 16 ("We do not attempt to set forth the

metes and bounds of the President's authority to "regulate . . . importation" under IEEPA…  Our

task today is to decide only whether the power to "regulate . . . importation," as granted to the

President in IEEPA, embraces the power to impose tariffs.  **It does not**." (emphasis added)).

25.     On November 11, 2025, a U.S. importer of merchandise subject to IEEPA duties

filed an action in this Court challenging the legality of these Executive Orders.  *AGS Company*

*Automotive Solutions v. U.S. Customs and Border Protection*, No. 25-255 (Ct. Int'l Trade filed

---

[7] *Id*. at Annex I.

[8] *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).

[9] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

Nov. 11, 2025), ECF No. 3.  The instant action is comparable to the cases consolidated under Court No. 25-255.

26.     On December 15, 2025, this Court denied AGS Company Automotive Solutions' motion for preliminary injunction, finding that plaintiffs are not at risk of experiencing irreparable harm as a result of liquidation because this Court has the authority to order reliquidation in cases involving constitutional challenged to duties under 28 U.S.C. § 1581(i). *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).  In *AGS* and others involving IEEPA duties, "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in *V.O.S.*"  *Id*. at 8.  As a result, now that the Supreme Court has held that the President lacked the authority to impose the challenged tariffs under IEEPA, Defendants are bound by their agreement not to oppose the relief requested in this Complaint.

### C.     Implementation of the Challenged IEEPA Tariffs by Defendant CBP

27.     CBP is responsible for administering and collecting duties imposed under U.S. law, including the IEEPA-based tariffs at issue.  *See* 19 U.S.C. §§ 1500, 1502.

28.     Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS.  *See* 19 U.S.C. § 1292; Pub. L. No. 100-418, 102 Stat. 1107 (1988).  Under the HTSUS framework, CBP classifies goods entering the United States using an organized structure of chapters, headings, and subheadings, each identifying goods and corresponding duty rates.  The HTSUS headings cover broad categories of merchandise, while the subheadings provide more specific classifications.

29.     CBP regulations govern how merchandise must be classified and appraised under the HTSUS.  *See* 19 C.F.R. § 152.11.

30.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS in accordance with presidential directives.  *See* 19 U.S.C. §§ 1202, 3005, 3006.

31.     When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS.  19 U.S.C. §§ 1202, 1500, 1502.  To facilitate the collection of tariffs, CBP uses its Cargo Systems Messaging Service ("CSMS") to inform importers of changes to the amount and administration of import duties.  The guidance incorporates and imposes the current duties imposed under the IEEPA Tariff Orders.[10]

32.     In implementing the challenged tariff orders, CBP required that goods subject to the IEEPA duties be classified under newly created tariff codes – codes that exist solely because of the Executive Orders that the Supreme Court has declared unlawful.

**D.     Liquidation**

33.     CBP's regulations define "Liquidation" as "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1.

---

[10] *See, e.g.*, CBP, CSMS # 64297449, *Guidance: Additional Duties on Imports from Canada* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d519e9; U.S. Customs & Border Prot., CSMS # 64297292, *Guidance: Additional Duties on Imports from Mexico* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d5194c; U.S. Customs & Border Prot., CSMS # 64299816, *Update – Additional Duties on Imports from China and Hong Kong* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, *Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates* (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

34.     When goods enter the United States, the importer of record pays estimated duties

based on the declared value of the goods, the country of origin, and HTSUS classification.  *See*

19 U.S.C. § 1484.  CBP reviews the entry declaration and examines the merchandise.

35.     After review, CBP finalizes the classification, value, duty rate, and total duties

owed.  *See* 19 U.S.C. § 1500.  CBP then "liquidates" the entry by notifying the importer of the

final calculation.  *See* 19 U.S.C. § 1504.  Upon liquidation, CBP will notify the importer if

additional duties are owed or if the importer is entitled to a refund of a portion of the estimated

duties paid.

36.     Unless extended, liquidation must occur within one year from the date of entry.

*See* 19 U.S.C. § 1504(a).  As a matter of practice, CBP typically liquidates duties within 314

days after entry and posts public notices of liquidation.

37.     This Court has equitable power to suspend liquidation where necessary.  *See, e.g.*,

*In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

38.     After liquidation occurs, and if the liquidation is protestable, an importer of record

has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the entry.

19 U.S.C. § 1514.  An importer may protest "any clerical error, mistake of fact, or other

inadvertence . . . in any entry, liquidation, or reliquidation, and, decisions of the Customs

Service".  *Id.*  However, where CBP acts in a ministerial capacity, *i.e.*, without discretion, such

as by applying a duty rate without discretion, courts have held that the liquidation generally

cannot be protested.  *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *see

also Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001)

("Customs is powerless to perform any active role in the determination of the constitutionality of

the assessment.").

39.     In a separate, parallel action, *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, this Court recognized that plaintiffs "'are not required to file a protest' in cases involving constitutional challenges to duties" and concluded that "this court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i)."  Slip. Op. 25-154 at 7-8 (internal citations omitted).

40.     Moreover, in *AGS*, the Government has taken the position that it will not oppose the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful.  *Id.* 3-4.  The Government has taken the same position in other cases involving IEEPA tariffs, *id.* at n.1, and judicial estoppel would prevent it from taking an inconsistent approach after a final result in *V.O.S.*  *Id.* at 5 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

## II.    IEEPA Does Not Authorize the Imposition of Tariffs.

41.     The challenged Trafficking Tariff Orders and Reciprocal Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as sources of authority.  None of these

statutes gives the President the power to impose tariffs. Indeed, the U.S. Supreme Court has now expressly held that IEEPA does not authorize the duties imposed through these orders.

**III.    Plaintiff Has Paid IEEPA Duties Imposed Pursuant to the Challenged Executive Orders.**

42.     As of the date of this Complaint, Agro Sevilla has paid IEEPA duties imposed under the challenged Reciprocal Tariff Orders on its imports from Spain. These are among the very same Executive Orders that were found unlawful by this Court and the Federal Circuit.

43.     Plaintiff's imports subject to IEEPA duties entered the United States under newly created HTSUS codes that exist only because of the unlawful tariff regime.

44.     Plaintiff has paid IEEPA duties and continues to pay IEEPA duties on its imports of olives and olive products from Spain.

45.     The past import entries for which Plaintiff paid IEEPA duties are scheduled to liquidate starting on or about March 17, 2026.

46.     Based on Plaintiff's knowledge and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA tariffs. Without judicial relief, these entries will liquidate soon, potentially complicating or delaying Plaintiff's ability to obtain refunds.

### STATEMENT OF CLAIMS

*COUNT I:*     **THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS***

47.     Plaintiff incorporates by reference paragraphs 1-46 above.

48.     The Supreme Court has held in *Learning Resources* that the President exceeded the authority conferred by IEEPA when he imposed the challenged tariffs. As this Court explained in its *V.O.S. Selections* opinion, IEEPA authorizes the President to "investigate,

regulate, or prohibit" certain categories of transactions involving foreign countries during a national emergency, but it does not authorize the imposition of tariffs or duties on imported goods.  Nor does it transfer tariff-imposing power from Congress to the President.  *See also Learning Resources*, 607 U.S. ___, slip op. at 16 ("We do not attempt to set forth the metes and bounds of the President's authority to "regulate . . . importation" under IEEPA. …  Our task today is to decide only whether the power to "regulate . . . importation," as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

49.     The challenged tariffs in this Complaint are the same as those struck down by the Supreme Court in *Learning Resources* and by this Court in *V.O.S. Selections*.  They rely exclusively on IEEPA as the basis for imposing duties and revising the HTSUS.

50.     For the same reasons articulated by the Supreme Court, the Federal Circuit, and this court the challenged tariffs in this case exceed the President's statutory authority and are therefore unlawful and void as to Plaintiff.

51.     Plaintiff respectfully requests this Court in this action declare that the challenged tariffs are unlawful as to Plaintiff, and enjoin CBP from collecting IEEPA duties from Plaintiff. The Court should further order CBP to refund all IEEPA duties collected from Plaintiff since their imposition, plus interest, as provided by law.

52.     To the extent that Plaintiff's entries liquidate during the pendency of this action, the Court should exercise its authority under 28 U.S.C. § 1581(i) to order reliquidation of all such entries so that Plaintiff may receive refunds of all IEEPA duties.

**COUNT II:     ALTERNATIVELY, THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL**

53.     Plaintiff incorporates by reference paragraphs 1-52 above.

54.     The Supreme Court held in *Learning Resources* that the imposition of tariffs under IEEPA was unconstitutional.  As the Court explained, the Constitution vests in Congress exclusively the power to "lay and collect … Duties."  U.S. CONST. art. I, § 8, cl. 1.  Under well-established separation-of-powers principles and Supreme Court precedent, Congress may not delegate this authority to the President unless it provides clear and intelligible guidance that limits and guides the exercise of the executive discretion.  *See Learning Resources*, 607 U.S. ___, Slip Op. at 8.

55.     IEEPA contains no such intelligible principle with respect to tariffs.  Nothing in IEEPA provides any standard, limit, or guidance under which the President may impose duties, revise duty rates, or modify tariff schedules.  As a result, interpreting IEEPA to authorize the challenged tariffs would amount to an impermissible transfer of legislative power to the executive branch.

56.     Plaintiff therefore seeks a declaration that the IEEPA-based tariff orders are unconstitutional as applied to Plaintiff, an injunction prohibiting CBP from enforcing the tariffs as to Plaintiff, and an order directing CBP to refund all IEEPA duties paid by Plaintiff, plus interest, as provided by law.

**COUNT III**:  **DECLARATORY RELIEF**

57.     Plaintiff incorporates by reference paragraphs 1-56 above.

58.     Under 28 U.S.C. § 2201(a), federal courts may declare the rights and legal relations of parties where an actual controversy exists.

59.     An actual controversy exists here concerning the President's asserted authority to impose tariffs under IEEPA, the constitutionality of IEEPA, and CBP's authority to implement and collect the resulting duties.

60.     Plaintiff has suffered injury by having been required to pay IEEPA duties as a result of IEEPA Tariff Orders on merchandise Plaintiff has imported into the United States.

61.     This Court may exercise its equitable authority to issue a declaratory judgment that the challenged IEEPA Tariff Orders are unlawful for any of the reasons set forth above, and that CBP lacks authority to implement or collect the resulting duties as to Plaintiff.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests that this Court:

a)      Declare that the President lacks the authority under IEEPA to set tariff rates or impose new tariffs;

b)      Declare that the challenged Trafficking Tariff Orders and Reciprocal Tariff Orders are unlawful;

c)      Declare that, with respect to Plaintiff, CBP lacks the authority to implement and collect any tariffs set out in the HTSUS that are based on the challenged tariff orders;

d)      Permanently enjoin CBP from imposing and enforcing any tariffs on Plaintiff's entries as set out in the HTSUS that are based on the challenged tariff orders;

e)      Order CBP to reliquidate any of Plaintiff's liquidated entries for which Plaintiff paid IEEPA duties;

f)      Order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest, as provided by law; and

g)      Grant such further relief as this Court deems proper.

Respectfully submitted,

/s/ *Matthew McCullough*

Matthew McCullough
Julian Beach

**Pillsbury Winthrop Shaw Pittman LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
202-663-8141

*Counsel for Plaintiff*

Dated: February 23, 2026